UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| TRACY L. SMITH, ) | |
| ) | |
|   Plaintiff, ) | |
| ) | |
|    vs. ) | Cause No. 2:14-cv-213-WTL-MJD |
| ) | |
| CAROLYN W. COLVIN, COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
|   Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Tracy L. Smith requests judicial review of the final decision of Defendant Carolyn Colvin, Commissioner of the Social Security Administration ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Smith filed her application for DIB in November 2009, alleging disability beginning on May 1, 2008. Her application was denied initially and upon reconsideration, whereupon she requested and was granted a hearing before an administrative law judge ("ALJ"), which took place in March 2011. The ALJ issued a decision in which he concluded that Smith was not disabled as defined by the Act. Upon review, the Appeals Council remanded Smith's application for, *inter alia*, evaluation of the hearing testimony of psychologist Susan Pelzer, Ph.D., in light of evidence submitted subsequent the hearing. A second hearing was held before a different ALJ, who issued a decision in March 2013 concluding that Smith was not disabled. This time the Appeals Council denied Smith's request for review of the ALJ's decision, and Smith filed this action for judicial review.

The Court referred this matter to Magistrate Judge William Hussmann to render a report and recommendation. Judge Hussmann determined that remand was necessary because it was not clear whether the second ALJ had properly reviewed Dr. Pelzer's opinion, inasmuch as her testimony was not part of the administrative record on appeal. However, Judge Hussmann granted "the Commissioner leave to respond to [his] *Report and Recommendation* with evidence demonstrating that a transcript of Smith's first hearing actually was part of the administrative record" before the second ALJ, and stated that if the Commissioner filed such evidence and a copy of the transcript, he would reconsider his recommendation. The Commissioner did so. Judge Hussmann retired before he could reconsider his recommendation, however. Accordingly, the Court has reviewed this matter *de novo*.

## II.  EVIDENCE OF RECORD

The relevant evidence of record is aptly set forth in the parties' briefs and the ALJ's decision and need not be repeated here.

## III.  APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is

not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. This Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## IV. THE ALJ'S DECISION

The ALJ found at step one that Smith did not engage in substantial gainful activity between her alleged onset date of May 1, 2008, and her date last insured, March 31, 2012. At steps two and three, the ALJ found that Smith had the severe impairments of diabetes, diabetic neuropathy, diabetic ketoacidosis, hepatitis C, cirrhosis, carpal tunnel syndrome, degenerative disc disease, obesity, bipolar disorder, generalized anxiety disorder, depression, and attention deficit hyperactivity disorder, but that her impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ concluded that during the relevant time period Smith had

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), which includes the ability to lift up to 10 pounds occasionally, stand and/or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. She could occasionally climb ramps or stairs, but she could never climb ladders, ropes, or scaffolds. The claimant could occasionally balance, stoop, kneel, crouch, or crawl. She could frequently handle and finger bilaterally. The claimant could occasionally reach overhead bilaterally. She had to avoid even moderate exposure to hazards. The claimant could understand, remember, and carry out simple, routine, repetitive instructions or tasks. She could maintain adequate attention and concentration for those tasks. The claimant could interact appropriately on a brief, superficial basis with coworkers and supervisors. She could have no contact with the general public. The claimant required work free of fast-paced production or quotas, but she could otherwise manage the changes associated with a routine work setting.

Record at 20. Given this residual functional capacity ("RFC"), the ALJ determined that Smith was unable to perform any of her past relevant work. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Smith could perform, including table worker, circuit board assembler, and document prep clerk. Accordingly, the ALJ concluded that Smith was not disabled as defined by the Act.

## V. DISCUSSION

Smith argues that the ALJ erred in several respects. Each of her arguments is addressed, in turn, below.

Smith first argues that the ALJ's finding that she is capable of frequent bilateral handling and fingering is not supported by substantial evidence. The ALJ found that Smith had the severe impairment of diabetic neuropathy, which Smith testified caused pain and numbness in her hands and feet:

> Q: What kind of problems do you have using your hands?
>
> A: I can't feel them, for one thing.
>
> Q: Okay. Do you have problems grasping, holding on to things?
>
> A: Yes, very much so.
>
> Q: How about doing small things like buttoning a button, zipping a zipper, holding a pen to write?
>
> A: Sometimes I can't do it. Sometimes I . . . have to have [my mother] do it. . . .
>
> Q: So do you think you could use your hands to do small things like that all day long throughout a day?
>
> A: No way.
>
> Q: Okay. Do you think you could use them two hours out of an eight-hour day?
>
> A: No . . . because they're numb all the time. There's pain all the time.

Record at 64-65. The ALJ noted that an EMG showed "some mild to moderate neuropathy at her right wrist," but that her "grips were found to be normal and symmetrical (Exhibit 3F) . . . [and] her fine finger movements were normal. (Exhibit 12F)." *Id.* at 22. Exhibit 3F consists of hospital records related to various visits between March 2008 and November 2009 for a variety of issues, none of which relate specifically to diabetic neuropathy. Exhibit 12F is the report from

a February 2010 consultative exam that notes that her "[f]ine finger movements are normal and the patient had normal ability to handle small objects and button buttons on her clothing" and that her motor strength was 4/5 in her upper and lower extremities. *Id.* at 737. However, in April 2011 she was admitted to the hospital for diabetic ketoacidosis and diagnosed with diabetic neuropathy with impaired proprioception. *Id.* at 933. In November 2011, she was again admitted to the hospital; at that time neuropathic tingling in her hand and decreased sensation in both upper extremities were noted. *Id.* at 1019-21. The EMG noted by the ALJ was performed on February 13, 2012, and on May 2012, shortly after her date last insured, Smith was seen at Indiana Neuroscience Associates for painful peripheral polyneuropathy secondary to diabetes. *Id.* at 1011.

The ALJ appears to have determined that Smith's testimony regarding the pain and numbness she experienced in her hands was contradicted by medical records indicating that routine neurological exams revealed "sensory & motor WNL."[1] *Id.* at 23 ("After her hospitalizations, the claimant once again was found to be neurologically intact, with normal sensory and motor function. (Exhibit 27F)." The basis for that conclusion is unclear, however. There is no medical expert testimony or consultative examiner to explain the import of these findings, and "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014) (citations omitted).

The Commissioner argues, correctly, that a "mere diagnosis" of an impairment is not sufficient to show that it is disabling. However, here Smith testified that her symptoms would prevent her from using her hands for two hours out of an eight hour day. The ALJ did not

---

[1] The Court assumes "WNL" means "within normal limits."

adequately explain her reasoning for discounting Smith's testimony. *See, e.g., Hill v. Colvin*, 807 F.3d 862, 869 ("Hill *testified* that she is more limited, and her testimony cannot be disregarded simply because it is not corroborated by objective medical evidence.") (emphasis added); *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) ("The determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning."). On remand the ALJ should take care to examine Smith's allegations with regard to all of her subjective symptoms and properly explain her reasons for accepting and/or rejecting those allegations, taking care to follow the process set forth in SSR 16-3p and keeping in mind that the Commissioner "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p.

The Court also agrees with Smith that the ALJ's consideration of the effects of bipolar disease on Smith's ability to work is erroneous. The ALJ noted that Smith at times did not take her medication because she could not afford it and noted:

> While the undersigned is sympathetic to the fact that the claimant may have lacked the funds to pay for medication, if her mental impairments were truly as limiting as she suggests, the undersigned would have expected her to seek out alternative, less expensive treatment methods, or any free medical services, that may have been available in her community. Furthermore, at other times the record indicates the claimant simply stopped taking her medications on her own, without any indication that it was due to an inability to pay for them. . . . This suggests her mental impairments were not as limiting as she suggests, for if they were, the undersigned would have expected the claimant to take her medications as prescribed.

*Id.* at 23-24. The ALJ points to no evidence that any less expensive treatment methods were, in fact, available to Smith, nor does she acknowledge that fact that the nature of bipolar disease itself "may prevent the sufferer from taking her prescribed medicines or otherwise submitting to

7

treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006). Because it appears that the ALJ's evaluation of the extent of Smith's psychological symptoms was based, at least in part, on the ALJ's unsupported assumption that Smith's bipolar disorder must not be disabling because she has not always been compliant with her medication regimen, that determination must be reexamined on remand.[2]

Finally, with regard to the ALJ's treatment of the report submitted by Smith's mother, which Smith also argues was erroneous, it is not entirely clear to the Court what that treatment was. The ALJ states that "[t]o the extent these statements by the claimant's mother show the claimant was not disabled, the undersigned accords them some evidentiary weight" but that the mother "also essentially echoed the claimant's allegations with regards [sic] to her limitations, and these alleged limitations are not entirely supported by the evidence of record." Record at 24. On remand, the ALJ should clarify what part of Smith's mother's report she accepted, what part she rejected, and why she made that determination.

## VI. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

---

[2]Smith argues that the ALJ erred failed to comply with the Appeals Council directive to consider evidence that was submitted after the first hearing in determining whether Smith had a closed period of disability due to interferon treatment. Smith fails to discuss what this evidence is and how it supports her disability claim, however, and "[i]t is not this court's responsibility to research and construct the parties' arguments." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011).

SO ORDERED: 8/23/16

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification